IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| BREY CORP. T/A HOBBY WORKS, Plaintiff, | * * * * | |
| v. | * * | Civil Action No. AW-11-cv-00718-AW |
| LQ MANAGEMENT L.L.C., Defendant. | * * * * | |

**********************************************************************

## Memorandum Opinion

Pending before the Court is Defendant LQ Management L.C.C. ("LQ")'s motion to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *See* Doc. No. 12. The Court has reviewed the motion papers submitted by the Parties and finds that no hearing is necessary. *See* Loc. R. 105(6) (D. Md. 2010). For the reasons articulated below, the Court denies Defendant's motion.

### I.  Factual and Procedural Background

The following facts are drawn from the Complaint and documents referenced therein and construed in the light most favorable to Plaintiff. On March 18, 2011, Plaintiff Brey Corp ("Brey"), a Maryland corporation, filed this putative Rule 23 class action under the Telephone Consumer Protection Act ("TCPA") against LQ, a Texas corporation. Brey's complaint alleges that LQ violated the TCPA by sending Brey two unsolicited advertisements by fax. Compl. ¶ 14.

The TCPA prohibits the use of a fax machine to send unsolicited advertisements for goods and services. 42 U.S.C. § 227(b)(1)(C). Congress enacted the TCPA in an attempt to remedy abusive telemarketing practices. In signing the TCPA into law, Congress recognized that

"unrestricted telemarketing . . . can be an intrusive invasion of privacy . . ." 47 U.S.C. § 227, Congressional Statement of Findings #5.

Brey claims that the advertisements it received, which were also sent to "thousands of other consumers," is part of LQ's "uniform policy and procedure" of sending "unsolicited [fax] advertisements to tens of thousands of consumers" over the past four years. Compl. ¶¶ 14, 19, 20. For each unsolicited fax they received, Brey and the other class members would be entitled to statutory damages of $500 or the amount of their actual loss, whichever is greater. *Id.* ¶ 10 (citing 47 U.S.C. § 227(b)(3). As a result, the complaint alleges that "the matter in controversy exceeds the sum or value of $5,000,000 in the aggregate for the class, exclusive of interests and costs." *Id.* ¶ 4.

On September 23, 2011, LQ filed the motion to dismiss currently pending before the Court, contending that Brey has not established subject matter jurisdiction and has failed to state a claim under the TCPA. Doc. No. 12.

**II.    Standard of Review**

There are two ways to present a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  First, a party may contend that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  In this situation, the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration. *Id.*  Second, a party may contend that the jurisdictional allegations in the complaint are not true. *Id.*  In the latter situation, the Court may conduct an evidentiary hearing and consider matters beyond the allegations in the complaint. *Id.*

**III.     Analysis**

LQ moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), contending that the complaint does not establish any basis for subject matter jurisdiction. The complaint alleges both federal question jurisdiction and diversity jurisdiction as sources of subject matter jurisdiction. LQ argues that the TCPA does not provide for federal question jurisdiction, and Brey has not alleged facts sufficient to meet the amount-in-controversy requirement as necessary to establish diversity jurisdiction. The Court agrees that the TCPA does not provide federal question jurisdiction but finds that Brey has alleged sufficient facts to meet the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), to establish diversity jurisdiction. Additionally, the Court notes that diversity jurisdiction is a proper means for bringing private actions under the TCPA in federal court. *Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 741 (D. Md. 2008).

   A.     <u>Federal Question Jurisdiction</u>

The complaint states that "[t]his Court has subject matter jurisdiction of the federal claims asserted in this action under 28 U.S.C. § 1331." Compl. ¶ 3. However, the Fourth Circuit has held that there is no federal question jurisdiction for claims under the TCPA. *Int'l Sci. & Tech. Inst., Inc. v. Inacom Commc'ns, Inc.*, 106 F.3d 1146, 1150, 1158 (4th Cir. 1997) (holding that § 227(b)(3) of the TCPA confers exclusive jurisdiction on state courts). The Court notes that Plaintiff's counsel has raised and then later conceded this argument in other cases as well. *See Germantown Copy Ctr., Inc. v. ComDoc, Inc.*, No. 10-cv-02799-DKC, 2011 WL 1323020, at *4 (D. Md. Apr. 1, 2011).

B.       Diversity Jurisdiction

The complaint also alleges, however, that the Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A). Compl. ¶ 4. In order for jurisdiction to be proper under CAFA, the plaintiff must meet the amount-in-controversy threshold of $5 million in the aggregate, there must be a class size greater than 100 people and minimal diversity. LQ contends that Brey has not alleged facts sufficient to meet the $5 million amount-in-controversy requirement. Brey contends that this threshold has been met because it alleged in its complaint that Defendant engaged in thousands of TCPA violations via the sending of unsolicited advertisements to "tens of thousands of consumers," where each violation entitles a plaintiff to recover at least $500. Brey can establish jurisdiction under CAFA even though its own individual claims, based on the sending of two unsolicited advertisements, do not meet the ordinary amount-in-controversy requirement, as long as its class action is large enough.

Where the complaint provides an amount-in-controversy, defendants attempting to dismiss "shoulder a heavy burden." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010). The amount-in-controversy is decided "from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed in 'good faith.'" *Choice Hotels Int'l, Inc. v. Shiv Hospitality, L.L.C.*, 491 F.3d 171, 176 (4th Cir. 2007) (quotation marks omitted). "If the plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court may dismiss only if it is apparent, *to a legal certainty*, that the plaintiff cannot recover the amount claimed." *JTH Tax*, 624 F.3d at 638 (quotation marks omitted). Here, Brey claims a sum sufficient to satisfy the statutory requirement, and LQ thus has a high burden at the motion to

dismiss stage to show either that the amount was not claimed in good faith or that Brey cannot recover the amount claimed "to a legal certainty."

LQ contends that this case does not meet CAFA's $5 million amount-in-controversy requirement under the pleading standard established in *Twombly* and *Iqbal* because Brey alleges no predicate facts to support its assertions that LQ transmitted unsolicited faxes to "thousands of other consumers in Maryland and elsewhere throughout the United States." However, as discussed above, in order to dismiss Brey's claim at this stage LQ must come forward with proof that Brey's allegation as to the volume of faxing is actually incorrect. LQ has presented no facts to counter the factually supported assumption drawn by Brey that the toll-free fax removal number listed on the unsolicited faxes it received strongly suggests the involvement of a contracted fax broadcaster, which in turn normally means that the fax campaigns at issue run well in excess of 10,000 transmissions. Brey's factually supported assumption regarding the number of unsolicited faxes sent by LQ renders its $5 million amount-in-controversy allegation plausible. LQ's arguments are unavailing for the reasons discussed above and were rejected by this Court in *Germantown*, a case substantially similar to the instant action and decided after both *Twombly* and *Iqbal*. *See* 2011 WL 1323020, at *2-3.

As in *Germantown*, this Court finds that Brey has alleged sufficient facts to support the $5 million amount-in-controversy requirement. Brey avers that LQ sent "unsolicited facsimile advertisements to tens of thousands of consumers" over "the past four years" and has put forth enough facts to show that such allegations are plausible. This is all that the *Iqbal* and *Twombly* pleading standard requires; Brey needn't state any and all facts proving its entitlement to relief. The TCPA contains no damages cap, *see* 47 U.S.C. § 227(b)(3), and given that each violation results in damages of $500 or more and LQ has allegedly engaged in "tens of thousands" of such

violations, a $5 million damage award is plausible. For all these reasons, the complaint will not be dismissed for lack of subject matter jurisdiction.

### IV.     CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss will be denied. A separate order will follow.

November 1, 2011 /s/
     Date     Alexander Williams, Jr.
    United States District Judge