IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| BREY CORP. t/a HOBBY WORKS, Plaintiff, | * * * * | |
| v. | * * | Civil Action No. AW-11-cv-00718-AW |
| LQ MANAGEMENT, L.L.C., Defendant. | * * * * | |

*************************************************************************

## Memorandum Opinion

Pending before the Court are Plaintiff Brey Corp. t/a Hobby Works ("Brey")'s Application for Issuance of Request for International Judicial Assistance to Canada (Letter of Request), Doc. No. 25, and Brey's Motion to Modify the Scheduling Order Including Extension of Discovery Deadlines, Doc. No. 26. The Court has reviewed the motion papers submitted by the Parties and finds that no hearing is necessary. *See* Loc. R. 105(6) (D. Md. 2010). For the reasons articulated below, the Court GRANTS Plaintiff's motions.

**I.   Factual and Procedural Background**

On March 18, 2011, Brey, a Maryland corporation, filed a putative Rule 23 class action suit under the Telephone Consumer Protection Act ("TCPA") against LQ, a Texas corporation. The TCPA prohibits the use of a fax machine to send unsolicited advertisements for goods and services. 42 U.S.C. § 227(b)(1)(C). Brey claims that the two advertisements it received from LQ were also sent to "thousands of other consumers" as part of LQ's "uniform policy and procedure" of sending "unsolicited [fax] advertisements to tens of thousands of consumers" over the past four years. Compl. ¶¶ 14, 19–20. For each unsolicited fax received, Brey and other

class members would be entitled to statutory damages of $500 or the amount of their actual loss, whichever is greater. *Id.* ¶ 10 (citing 47 U.S.C. § 227(b)(3).

On September 23, 2011, LQ filed a motion to dismiss, which the Court ultimately denied on November 1, 2011. Doc. Nos. 12, 18. The Court proceeded to issue a Scheduling Order that same day. Doc. No. 19. On November 15, 2011, the parties filed a consent motion to modify the Scheduling Order, which was granted the following day. Doc. Nos. 22, 23. The modified Scheduling Order stipulated that discovery was to close on June 8, 2012, and Rule 26(e)(2) disclosures were due on May 18, 2012. *See* Doc. No. 23.

During the discovery period, Brey made multiple requests to LQ for document and information production. Until May 21, 2012, LQ provided a total production of only 11 pages in response to Brey's discovery requests. *See* Doc. No. 28 Ex. 7 at 1. LQ's responses to Brey's interrogatories were only minimally helpful, as LQ acknowledges that it could not locate many of the records that would have been responsive. *See* Doc. No. 28 Exs. 4, 7. In efforts to obtain information regarding the facsimile advertisements, Brey subpoenaed j2 Global ("j2"), a third party fax service provider retained by LQ. *See* Doc. No. 28 Ex. 2. In its subpoena response, j2 informed Brey that its subsidiary Protus, a Canadian corporation, had information that would be responsive to Brey's requests. *Id*. at 1. J2 also informed Brey that, under Canadian law, Protus could not produce the responsive documents without a court order from an Ontario court. *Id.*

Brey is now requesting an additional six months of discovery in order to obtain the information and records in Protus's custody. *See* Doc. No. 26 at 6. Brey is further requesting an opportunity to designate an expert and depose witnesses after obtaining the information from Protus. *Id.* at 5. In order to get a Canadian court order, Brey filed with this Court an Application for the Issuance of a Request for International Judicial Assistance to Canada (also known as a

motion for issuance of letters rogatory) on June 6, 2012. *Id.* at 4. Brey has also retained Canadian counsel to expedite the legal process in Canada. *Id.* On June 20, 2012, LQ filed a response to both motions contending that Brey had been given ample time to conduct discovery and had failed to show good cause for either an extension of the discovery deadline or issuance of letters rogatory. Doc. Nos. 28, 30. Furthermore, in its opposition to the motion for letters rogatory, LQ requested that if the Court did grant Brey's motion, that it limit the scope of discovery from that sought by Brey. *See* Doc. No. 28 at 4.

## II. Analysis

### A. Motion to Modify the Scheduling Order, Including Extension of Discovery Deadlines

In its motion, Brey claims it needs additional time to complete essential discovery and to designate an expert and depose additional witnesses. Brey's request is premised on LQ's inability to produce the information and records Brey is seeking. It is further premised on the knowledge that a Canadian company, Protus, possesses the information essential to Brey's case—information Protus cannot turn over without a court order from an Ontario court.

Rule 16(b)(4) of the Federal Rules of Civil Procedure governs the modification of a scheduling order. This rule provides courts with considerable discretion in managing and modifying the timing of pretrial discovery and other scheduling matters. *See Dent v. Montgomery*, 745 F. Supp. 2d 648, 663 (D. Md. 2010). The "only formal limitation on this discretion with respect to consideration of motions to [modify] scheduling orders is that the moving party demonstrate good cause." *Dent*, 745 F. Supp. at 663 (*citing* Fed. R. Civ. P. 16(b)(4)). The moving party shows good cause when it "demonstrates that the scheduling order deadlines cannot be met despite its diligent efforts." *Id.* (*citing Potomac Elec. Power Co. v. Elec. Motor Supply, In*c., 190 F.R.D. 372, 375 (D. Md. 1999). While prejudice to the opposing

party might provide additional reasons to deny the motion, the "primary consideration is the diligence of the moving party." *Montgomery v. Anne Arundel Cnty., Md.*, 182 Fed. App'x. 156, 162 (4th Cir. 2006). *See Potomac*, 190 F.R.D. at 376 (noting a failure to show good cause when the moving party failed to disclose an expert for four months after the disclosure deadline); *see also Dent*, 745 F. Supp. 2d at 663-64 (finding no good cause in part because the discovery deadlines had been extended twice before).

Here, the evidence shows that Brey has made diligent efforts to obtain the essential information it is seeking. Throughout the discovery period, Brey made multiple requests to LQ to produce the information and records vital to its case. These requests have come in the form of discovery notices, interrogatories, and emails—most of which LQ objected to or otherwise acknowledges it was unable to fully answer. In efforts to obtain the information sought, Brey moved on to subpoenaing nonparties such as j2 and Protus. When Brey was informed that Protus had relevant information but could only turn it over with a court order from a Canadian court, Brey requested that LQ consent to a joint motion for letters rogatory. This request was also met with resistance.

Due to LQ's inability to produce the information needed, Brey proceeded to retain Canadian counsel and file a motion for letters rogatory on its own behalf. This Court has previously recognized the "hurdles in obtaining discovery from a Canadian company…[.]" *Ellicott Mach. Corp. Int'l. v. Jesco Constr. Corp.*, 199 F. Supp. 2d 290, 296 (D. Md. 2002). Because the Court finds that Brey has proceeded diligently and has a need for certain essential information possessed by Protus, Brey has demonstrated good cause for a discovery extension to pursue such information. Although there may have been intermittent periods where Brey failed to take immediate action to obtain an issuance of letters rogatory from this Court, Brey has

sufficiently explained these delays and regardless, they do not amount to a lack of due diligence.

The Court will also grant Brey's request for additional time within which to designate an expert and depose witnesses after obtaining the needed information from Protus. As stated above, LQ has acknowledged its inability to produce almost all of the information vital to Brey's case. Despite any diligent efforts of Brey, the information collected by Brey from LQ did not lend itself to expert review or witness identification. Once Brey receives the information it alleges is crucial to its case, it will be able to better identify the most effective experts and witnesses.

B. <u>Brey's Application for Issuance of Request for International Judicial Assistance to Canada (Motion for Issuance of Letters Rogatory)</u>

Brey also filed a motion for issuance of letters rogatory in which it asks this Court to issue a letter of request to the Superior Court of Justice of the Province of Ontario, Canada, that it direct Protus to produce the relevant documents in its possession and appear for a deposition regarding those documents. Brey's request is rooted on the fact that Protus is the only entity currently in possession of the records and information vital to Brey's case.

Letters rogatory "are the means by which a court in one country requests the court of another country to assist in the administration of justice…[.]" *United States v. Rosen*, 240 F.R.D. 204, 215 (E.D. Va. 2007). "Federal courts have both statutory and inherent authority to issue letters rogatory, regardless of whether the case is civil or criminal." *Id.* (*citing* 28 U.S.C. § 1781; *United States v. Staples*, 256 F.2d 290, 292 (9th Cir. 1958), *United States v. Steele*, 685 F.2d 793, 802 (3d Cir. 1982)). A court's decision to issue letters rogatory lies within its sound discretion. *Rosen*, 240 F.R.D. at 215; *see also United States v. Mason*, 919 F.2d 139 (4th Cir. 1990) (unpublished per curiam decision). Courts have required that "some good reason [] be shown by the opposing party for a court to deny an application for a letter rogatory." *DBMS Consultants*

*Ltd. v. Computer Assoc. Int'l., Inc.*, 131 F.R.D. 367, 369 (D. Mass. 1990) (citation omitted).  On the other hand, courts have found that "letters rogatory should be issued only where 'necessary and convenient,'" *Rosen*, 240 F.R.D. at 215 (citation omitted).  Although noting that the letters rogatory process is a "complicated, dilatory, and expensive" one,  any delays caused by the process are "justified if necessary to ensure a fundamentally fair trial…[.]"  *Id.*

The importance of the information sought to Brey's case counsels in favor of an issuance of letters rogatory.  Due to LQ's inability to produce the records Brey needs, Brey has been forced to turn to nonparties who possess the relevant documents.  While the nonparty has expressed its willingness to produce the documents, it cannot do so without orders from a Canadian court. While there may be some delay and expense associated with obtaining this additional discovery, the records and information sought are essential for the meaningful, merit-based resolution of this case.  The Court additionally notes that Brey has already taken steps to avoid the delay typically associated with the letters rogatory process by retaining Canadian counsel.  The Canadian counsel are presumably familiar with the Canadian court system and should be able to more efficiently work with the Canadian court to obtain the necessary order.

LQ contends that Brey's application for letters rogatory should be denied as untimely because Brey was aware that a motion for letters rogatory would be necessary as early as February, 2012 and yet failed to request one until shortly before the close of discovery.  LQ argues that Brey's delay was particularly inexcusable because Brey's counsel has previously requested letters rogatory from this Court and is familiar with the process.  It appears, however, that Brey had good cause to research this issue and retain Canadian counsel before filing the instant motion, as it had never before filed a contested motion for issuance of letters rogatory.  The Court finds that Brey did not unreasonably delay its filing of the instant motion.

C. <u>LQ's Request to Limit the Scope of Discovery Sought from Protus</u>

In its opposition to the application for letters rogatory, LQ requests that the Court limit the scope of discovery sought from Protus. Rule 26(b) of the Federal Rules of Civil Procedure governs the scope of discovery. Rule 26(b)(1) stipulates that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Due to the ambiguity surrounding the notion of relevance, "'[d]istrict courts enjoy nearly unfettered discretion to control the timing and scope of discovery…[].'" *Clere v. GC Services, L.P.*, No. 3:10–cv–00795, 2011 WL 2181176, at *2 (S.D. W.Va. 2011) (citing *Hinkle v. City of Clarksburg*, 81 F.3d 416, 426 (4th Cir. 1996)). In order to limit the scope of discovery, the "party resisting discovery bears the burden of showing why [the discovery requests] should not be granted." *Clere*, 2011 WL 2181176, at *2.

LQ contends that Brey's document requests from Protus exceed the scope of discovery because Brey requests records outside of the four year limitations period governing this action. Brey correctly asserts that information regarding the pattern, practice, and knowledge of LQ's advertisement campaign may be contained in records found prior to March 18, 2007. Because such information is highly relevant to Brey's claims, and because the scope of records sought (2007-2012) is not unreasonable, the Court will allow for discovery of such records.

LQ additionally contends that Brey's request for records involving other entities associated with the La Quinta name should be limited. These records may also contain information related to the class action claims, however, because all of the entities for which

7

information was requested were owned by LQ during the period in which the alleged unsolicited faxes were sent.  Accordingly, Brey has shown good cause for allowing discovery of both sets of relevant information; thus LQ's request to limit the scope of discovery will be denied.

**II.     Conclusion**

For the foregoing reasons, Brey's Motion for Modify the Scheduling Order and Brey's Application for the Issuance of Request for International Judicial Assistance to Canada will be granted. The Court will issue an Order to this effect.

| | |
|---|---|
| July 25, 2012 | /s/ |
| Date | Alexander Williams, Jr.<br>United States District Judge |