**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| BREY CORP., t/a Hobby Works, | ) | |
| On behalf of itself and all others similarly | ) | |
| Situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 8:11-cv-00718-AW |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LQ MANAGEMENT LLC | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND MEMORANDUM IN SUPPORT**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

I.      INTRODUCTION ............................................................................................ 1

II.     RELIEF REQUESTED ..................................................................................... 3

III.    BACKGROUND .............................................................................................. 3

    A.   The Junk Fax Problem as recognized and addressed by Congress. ................... 3

    B.   The specific requirements of the TCPA........................................................... 3

IV.     STATEMENT OF FACTS ................................................................................ 5

    A.   LaQuinta's corporate structure and corporate involvement in the facsimile advertising campaign at issue. .......................................................................... 5

    B.   LaQuinta memorializes the illegal facsimile marketing campaign it utilized. ................... 6

    C.   Using its own general managers, LaQuinta sent the Plaintiff and putative class members unsolicited facsimile advertisements. ............................................................. 7

    D.   The Plaintiff has confirmed the existence of a facsimile broadcasting campaign through Canadian based company PROTUS. .......................................................... 8

V.      ARGUMENT .................................................................................................... 9

    A.   The policy behind Rule 23 requires certification in this case to protect the interest of justice and rights of the class. .......................................................................... 9

    B.   Plaintiff meets each of the four requirements of Rule 23(a).......................................... 111

        1.   Defendant's widespread illegal marketing campaign satisfies numerosity. ............... 12

        2.   Common questions of fact and law dominate Plaintiff's class claims due to LaQuinta's uniform illegal facsimile marketing campaign ......................................... 12

        3.   Plaintiff's claims are typical of the class and no conflict exists .............................. 14

        4.   The class is adequately represented by both the Plaintiff and class counsel ............. 15

    C.   Class certification is maintainable under Rule 23(b)(3) because common questions predominate over individual inquiries and the class mechanism is superior to thousands of individual cases......................................................................................... 16

    D.   The records produced by Sales Genie and PROTUS are more than sufficient to identify the Class and prove violations .......................................................................... 20

VI.     CONCLUSION................................................................................................. 255

## <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*Agne  v. Papa John's International, Inc.*,
  286 F.R.D. 559 (W.D. Washington) ........................................................................ 21, 24, 25

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ......................................................................................... 15,16, 17

*American Home Services, Inc. v. A Fast Sign Company*,
  287 Ga.App. 161, 651 S.E.2d 119 (2007) ................................................................. 10

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
  133 S. Ct. 1184, 2013 U.S. LEXIS 1862 (2013) .......................................................... 12

*Appleton Elec. Co. v. Advance–United Expressways*,
  494 F.2d 126 (7th Cir.1974) ...................................................................................... 23

*Arrington v. Colleen, Inc.*,
  2001 WL 34117734 (D. Md. Apr. 2, 2001) ................................................................. 9

*Boundas v. Abercombie & Fitch Stores, Inc.*,
  280 F.R.D. 408 (N.D. Ill. 2012) ................................................................................. 21

*C.E. Design LTD v. King Architectural Metals, Inc.*,
  2010 TCPA Rep. 2068 WL 5146641 (N.D. Ill. Dec. 13, 2010) ............................... 10

*CE Design v. Beaty Const., Inc.*,
  No. 07 C 3340, 2009 WL 192481 (N.D. Ill. Jan. 26, 2009) ...................... 10, 23, 25

*CE Design v. Cy's Crabhouse North, Inc*,
  259 F.R.D. 135 (N.D. Ill. July 27, 2009) ............................................................. 10, 11

*Creative Montessori Learning Center v. Ashford Gear*,
  2011 TCPA Rep. 2149 (N.D. Ill. July 27, 2011) ........................................................ 10

*Critchfield Physical Therapy v. The Taranto Group, Inc.*,
  263 P.3d 767 (Kan. 2011) ................................................................................. 10, 11, 24

*Display South, Inc. v. Graphics House Sports Promotions, Inc.*
  --- So.2d ----, 2008 WL 2329929 (La.App. 1 Cir. 2008) ...................................... 10

*Ealy v. Pinkerton Gov't Servs., Inc.*,
  No. 12-1252, 514 Fed. Appx. 299 2013 WL 980035 (4th Cir. Mar. 14, 2013) ...................... 12

*Engine Mfrs. v. South Coast Air Quality Management Dist.*,
  541 U.S. 246, 124 S.Ct. 1756, 158 L.Ed.2d 529 (2004) ............................................ 5

*ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*,
  203 Ariz. 94, 50 P.3d 844 (Ariz. App. 2002) ........................................................... 10

*Forbush v. J.C. Penney Co.*,
  994 F.2d 1101 (5th Cir.1993) ................................................................................... 13

*G.M. Sign v. Finish Thompson, Inc.*,
  2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) ........................................................... 10

*G.M. Sign, Inc. v. Franklin Bank, S.S.B*,
  2008 WL 3889950 (N.D.Ill. 2008) ........................................................................... 10

*Garo v. Global Credit & Collection Corp.*,
  2011 TCPA Rep. 2087 (D. Az. 2011) ....................................................................... 10

*Garrett v. Ragle Dental Lab., Inc.*,
  2010 U.S. Dist. LEXIS 108339 (N.D. Ill, October 12, 2010) .................................... 10

*Germantown Copy Center, Inc. v. ComDoc, Inc.*,
  2011 WL 1323020 (D. Md. 2011) ...................................................................................... 10
*Green v. Service Master on Location Services*,
  2009 WL 1810769 (N.D. Ill. June 22, 2009) ..................................................................... 10
*Gulf Oil Co. v. Barnard*,
  452 U.S. 89 (1981) .............................................................................................................. 9
*Gunnells v. Healthplan Services, Inc.*,
  348 F.3d 417 (4th Cir. 2003) ............................................................................................. 14
*Heckert v. MRC Receivables Corp.*,
  No. 08C760, 2008 U.S. Dist. LEXIS 98159, 2008 WL 5082725 (N.D.Ill.Dec.1, 2008) ......... 24
*Hicks v. Client Servs., Inc.*,
  2008 TCPA Rep. 1853 (S.D. Fla. 2008) ............................................................................ 10
*Hinman v. M & M Rental Ctr., Inc.*,
  545 F.Supp.2d 802 (N.D.Ill.2008) ............................................................................. 10, 11
*Hinman v. M & M Rental Ctr., Inc.*,
  596 F.Supp.2d 1152 (N.D.Ill. 2009) .................................................................................. 4
*Hooters of Augusta, Inc. v. Nicholson, et. al.*,
  245 Ga.App. 363, 537 S.E.2d 468 (2000) ......................................................................... 10
*Ira Holtzman v. Gregory Turza*,
  2009 WL 3334909 (N.D. Ill. Oct. 14, 2009) ..................................................................... 10
*Jonathan Blitz v. Agean, Inc.*,
  677 S.E.2d 1 (North Carolina Court of Appeals, June 2, 2009) ........................................ 10
*Kavu, Inc. v. Omnipak Corp.*,
  246 F.R.D. 642, (W.D.Wash., 2007) .......................................................................... 10, 11
*Kohl v. Association of Trial Lawyers of America*,
  183 F.R.D. 475 (1998) ........................................................................................... 12, 13, 14
*Lampkin v. GCH, Inc.*,
  146 P.3d 847 (2006) .......................................................................................................... 10
*Lee v. Stonebridge Life Insurance Co.*,
  289 F.R.D. 292 (N.D.Cal. Feb 12, 2013) ......................................................................... 10
*Mims v. Arrow Fin. Servs., LLC*,
  132 S. Ct. 740 (2012) ...................................................................................................... 1, 11
*Murray v. GMAC Mortg. Corp.*,
  434 F.3d 948 (7th Cir.2006) .............................................................................................. 17
*Pastor v. State Farm Mut. Auto. Ins. Co.*,
  487 F.3d 1042 (7th Cir.2007) ............................................................................................ 17
*Rossini v. Ogilvy & Mather, Inc.*,
  798 F.2d 590 (2d Cir. 1986) .............................................................................................. 16
*Sadowski v. Med1 Online, LLC*,
  2008 U.S. Dist. LEXIS 41766 (N.D. Ill. 2008) ........................................................... 10, 23
*Saf-T-Gard Intern., Inc. v. Wagener Equities, Inc.*,
  2008 WL 2651309 (N.D.Ill. 2008) ................................................................................... 10
*Smilow v. Southwestern Bell Mobile Systems, Inc.*,
  323 F.3d 32 (1st Cir.2003) ................................................................................................ 17
*Smith v. B & O Railroad Co.*,
  473 F.Supp. 572 (D.Md.1979) .......................................................................................... 14

iii

*Stillmock v. Weis Markets, Inc.,*
  385 Fed Appx. 267, 2010 WL 2621041 (C.A.4 (Md.)) (2010) ............................ 17, 18, 19, 20
*Targin Sign Sys., Inc. v. Preferred Chiropractic Ctr., Ltd.,*
  679 F.Supp.2d 894 (N.D.Ill.2010) ................................................................................... 11, 19
*The Savanna Group, Inc. v. Trynex, Inc.,*
  2013 U.S.Dist. LEXIS 1277 (N.D.Ill. Jan 4, 2013) ............................................................... 10
*Wal-Mart Stores, Inc. v. Dukes,*
  131 S. Ct. 2541 (2011) ..................................................................................................... 13, 16

## Statutes

28 U.S.C. §1914(a) ...................................................................................................................... 11
47 U.S.C. §227 .............................................................................................................................. 3
47 U.S.C. §227(b)(1)(C)(i)(ii)(iii) ............................................................................................... 3
47 U.S.C. §227(2)(D) .................................................................................................................... 3
47 U.S.C. §227(b)(3) ..................................................................................................................... 5
47 U.S.C. §227(b)(C) .................................................................................................................... 4

## Other Authorities

7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure*
  (3d ed.2005) ...................................................................................................................... 21
*Matter of Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991 & the Junk Fax
  Prevention Act of 2006,* 21 F.C.C.R. 3787 (April 6, 2006) ....................................................... 4

## Rules

Fed. R. Civ. P. 23 ................................................................................................................... 1, 3, 12
Fed. R. Civ. P. 23(a) ..................................................................................................................... 12
Fed. R. Civ. P. 23(a)(1) ................................................................................................................ 12
Fed. R. Civ. P. 23(a)(3) ................................................................................................................ 14
Fed. R. Civ. P. 23(a)(4) ................................................................................................................ 15
Fed. R. Civ. P. 23(b)(3) ......................................................................................................... passim

# I.  INTRODUCTION

Plaintiff Brey Corp. t/a Hobby Works, on its own behalf and on behalf of all other similarly situated persons or entities ("Plaintiff") brings this motion to certify this matter as a class action pursuant to Fed. R. Civ. P. 23 for all entities who were sent unsolicited facsimile advertisements by LQ Management LLC ("Defendant" or "LaQuinta") in violation of the Telephone Consumer Protection Act ("TCPA").  This case arises under the remedial provisions of the TCPA, a statute enacted more than twenty years ago in response to consumer outrage over the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012) ("Voluminous consumer complaints about abuses of telephone technology ... prompted Congress to pass the TCPA.  Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls.").

Actions brought under the TCPA epitomize the policies behind Rule 23 certification. Judicial economy, the uniformity of claims as well as facts, and the tens of thousands of intended recipients, makes certification necessary.  Here, the Defendant's own internal memoranda describe their practice and process of sending unsolicited facsimile advertisements promoting their hotels.  This practice and process led to the direct transmission of 26,497 unsolicited facsimile advertisements nationwide.

Initiating thousands of separate lawsuits would prove unwieldy and inefficient, overburdening the court system and leading to inconsistent adjudications of the same issues of law and fact.  As courts nationwide have recognized in previous decisions certifying similar claims under the TCPA, the Plaintiff's claims are easy to administer, the issues of law and fact are straightforward and virtually identical.  Moreover, Rule 23 ensures that the low value of the

individual recovery involved does not become a bar for consumers seeking relief under the

TCPA.  Because the controversy stems from a uniform illegal marketing campaign, common

issues of fact and law not only predominate but overwhelm any individual issues before the

Court.  These questions include, but are not limited to: (1) whether a facsimile advertisement is a

phone call within the meaning of the TCPA; (2) whether LaQuinta is liable for the acts of its

executive vice presidents, regional vice presidents, general managers and/or other employees;

and (3) whether the violation of the TCPA was "knowing" or "willful".

LaQuinta's contention through its expert witness that the class cannot be certified is

baseless.  The class is all intended recipients of unsolicited LaQuinta fax advertisements in the

four years prior to filing the complaint.  Plaintiff has identified a means of sending notice to the

potential recipients of those faxes, and can achieve adequate notice by a direct notice campaign

supplemented by regional publication.  LaQuinta conflates a misguided challenge to the

adequacy of notice with a challenge to liability for having sent the faxes.  There can be no

dispute that LaQuinta sent 26,497 unsolicited faxes.  Faced with unassailable facts, LaQuinta

attempts to suggest that Plaintiff must produce a complete class list of intended recipients (lost

by both LaQuinta and its agent).  However, as set forth below, notice and Rule 23 need only be

the best notice practicable under the circumstances, a test readily met by the Plaintiff's recreated

lists.  The notice that can be achieved in this case will more than satisfy due process.  Plaintiff

respectfully requests that this case be certified as a class action.

## II.  RELIEF REQUESTED

Pursuant to Fed. R. Civ. P. 23, Plaintiff respectfully requests this Court to certify the

following class: a nationwide class (hereinafter "Class Members"):

> All persons or entities in the United States of America who were sent at least one
> unsolicited facsimile advertisement that promoted LaQuinta goods or services at
> any time within the four years prior to the filing of the Complaint in this action.

Plaintiff seeks certification pursuant to Fed. R. Civ. P. 23(b)(3) in order for class members to

pursue their claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227.

## III. BACKGROUND

### A.  The Junk Fax Problem as recognized and addressed by Congress.

From 1989 to 1991, Congress considered several bills addressing abusive telemarketing

practices made possible by technological innovations, including the transmission of unsolicited

facsimile advertisements ("Junk Faxes").  In the process, Congress held three hearings and

produced three committee reports to craft a remedy.  Congress ultimately passed S.1462 (with its

accompanying bill in the House, H.R. 1305) in November 1991.  The measure was signed into

law as the Telephone Consumer Protection Act of 1991 and codified at 47 U.S.C. §227.  In so

doing, Congress recognized that "unrestricted telemarketing . . . can be an intrusive invasion of

privacy . . ."  47 U.S.C. § 227, Congressional Statement of Findings #5.

### B.  The specific requirements of the TCPA.

The TCPA strictly regulates, but does not bar, advertisements via facsimile.

Advertisement via facsimile is lawful if (1) the "prior express permission" of the facsimile

recipient has first been obtained, or (2) there is an "established business relationship" ("EBR")

between the entity whose goods are being advertised, and the facsimile recipient and the

unsolicited fax contains a compliant opt-out noticed mandated by U.S.C. 47 U.S.C. § 227(2)(D).

47 U.S.C. §227 (a)(5); 47 U.S.C. §227(b)(1)(C)(i)(ii)(iii).

3

In enacting the TCPA, Congress and the Federal Communications Commission, which interprets and enforces the TCPA, explicitly took steps to ensure that consumers could easily enforce the statute in an efficient manner.  For example, under the TCPA and FCC regulations, a telemarketer who claims it was permitted to send facsimile advertisements based on an EBR bears the burden of proof, and must maintain records that prove such a claim.  Any doubt as to who bears the burden of proof in this regard was removed by the Federal Communications Commission when it explicitly stated:

> To ensure that the EBR (Established Business Relationship) exemption is not exploited, we conclude that an entity that sends a facsimile advertisement on the basis of an EBR should be responsible for demonstrating the existence of the EBR.  The entity sending the fax is in the best position to have records kept in the usual course of business showing an EBR, such as purchase agreements, sales slips, applications and inquiry records.  We emphasize that we are not requiring any specific records be kept by facsimile senders.  Should a question arise, however, as to the validity of an EBR, the burden will be on the sender to show that it has a valid EBR with the recipient.

*See Matter of Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991 & the Junk Fax Prevention Act of 2006,* 21 F.C.C.R. 3787, 3793, ¶12 (April 6, 2006).

In order for individuals to readily enforce their rights under the TCPA, absent undue burdens and restrictions, the TCPA further provides a consumer seeking to prove a violation of the TCPA must only prove that a Junk Fax was "sent."  See 47 U.S.C. §227(b)(C) (" it shall be unlawful to '***send*** an unsolicited facsimile advertisement to a telephone facsimile machine…'"). The Court in *Hinman v. M & M Rental Center, Inc.,* 596 F.Supp.2d 1152 (N.D.Ill. 2009)

explained that the fact that a plaintiff need only prove that a fax was sent is supported by simple principle of statutory construction:

> On its face, the statute prohibits the *sending* of unsolicited fax advertisements and make no reference at all to receipt, much less to printing. "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Engine Mfrs. v. South Coast Air Quality Management Dist.,* 541 U.S. 246, 252, 124 S.Ct. 1756, 158 L.Ed.2d 529 (2004) (*quoting Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985)). While it is true, as defendant argues, that Congress expressed concern about fax blasters shifting material costs such as paper and toner to the recipients of unwanted "junk" faxes, Congress elected to define the proscribed activity with reference to sending, not to receipt or printing, and the legislative history does not support reading these additional, unstated elements into a TCPA claim.

*Hinman,* 596 F.Supp.2d at 1156.

Accordingly, in order to prevail on a statutory claim for damages under the TCPA, a consumer must only prove that it was (1) sent, (2) a facsimile advertisement. The responding telemarketer, in turn, bears the burden to prove that it had consent to contact the recipient in such a manner. The TCPA's damages are explicitly enumerated in the statute, requiring $500 per negligent violation of the fax, and authorizing an increase to $1500 for a "willful or knowing" violation. Injunctive relief is also authorized. *See* 47 U.S.C. §227(b)(3).

## IV. STATEMENT OF FACTS

### A. LaQuinta's corporate structure and corporate involvement in the facsimile advertising campaign at issue.

LaQuinta has approximately 16 regional vice presidents, each of whom manages between twelve and twenty-five hotel locations. *See* LaQuinta 30(b)(6) Deposition, attached as <u>Exhibit 1</u>, at 14. There are only a handful of employees at LaQuinta higher than regional vice presidents, with two executive vice presidents supervising the regional vice presidents. *See* Deposition of Kathleen Williams, attached as <u>Exhibit 2</u>, at 32. The regional vice presidents hire and fire

general managers, who are in charge of each LaQuinta location. *Id.* at 56. Both the general

managers and regional vice presidents have a base salary and a commission tied to the profit and

loss of their respective locations. *See* Deposition of Joseph Prinzo, attached as <u>Exhibit 3</u>, at 37.

LaQuinta utilized a number of general managers: George Lawson, April Comerford, and

Vicki Courtemanche, to send unsolicited facsimile advertisements. Mr. Lawson testified that he

participated in a conference call in which the general managers were instructed to conduct fax

marketing for LaQuinta. *See* Deposition of George Lawson, attached as <u>Exhibit 4</u>, at 10. Mr.

Lawson was instructed by his regional vice president, Joseph Prinzo, to be on the conference

call. *Id.* at 15. Mr. Prinzo informed Mr. Lawson that the fax marketing campaign "was not

voluntary" and that Mr. Lawson had no choice but to participate. *Id.* at 15-16. Mr. Lawson

further testified that it was his understanding that the fax campaign came at the direction of Mark

Workman, the Executive Vice President who supervised Mr. Prinzo. *Id.* at 34.

**B.  LaQuinta memorializes the illegal facsimile marketing campaign it utilized.**

One of the documents produced by LaQuinta in this case is a step-by-step instruction

document regarding the Junk Fax campaign that occurred.   The document states:

> **Fax Broadcasting**
> Lead source (www.Sales Genie.com) *infoUSA*
> * Select a data base (12 national databases)
> * Select type of business (hundreds of options)
> * Select size of business (from 1 to 10,000 employees/$1 to $1 billion)
> * Select Geography (ex. zip codes, area codes, metro area)
> * Other popular selects – job title, fax number, gender of executive, web site address, years in business, franchise
> * Review/change search criteria for businesses selected
> * Save selected sales leads
> * Download to (CVS) Comma Dellmited (*Sic*) fomat in Excel for uploading
>
> Contact Maria Everhart (Sales Genie rep.) @ 888-999-0580, ext. 3333 for a 72-hour FREE trial.  This is an awesome tool that includes credit

ratings that allow me to make more & quality contats per man hour. The cost is $180.00 per month.  The cost is shared by 2 properties.

Broadcasting source (www.Protus.com) Web based faxing company

- Select Web Fax service
- Who are you faxing to-select fax numbers from Sales Genie.com download
- What would you like to fax-select flyer saved on your computer
- When would you like for it to fax-select set time or immediate
- Review faxes in progress & fax history
- Done
- Data goes through their server to fax numbers

*See* LQ 000010, attached as <u>Exhibit 5</u>.

### C.  Using its own general managers, LaQuinta sent the Plaintiff and putative class members unsolicited facsimile advertisements.

The facsimile advertising campaign was funded on the LaQuinta company credit card of the regional vice president responsible for each campaign.  *See* Lawson Depo at 16-17.  The goal of the campaign was to "get revenue into the hotels that were suffering." *Id.* at 23.  Mr. Lawson testified directly that he sent a fax promoting three LaQuinta locations in Maryland that are in Joseph Prinzo's region, and that he recognized the content of the facsimile advertisement that was attached to the Plaintiff's Complaint. *Id.* at 24 and 29.

April Comerford is a general manager for LaQuinta in Florida, who was also a "fax blast specialist."  She testified that Brad Seehafer, her Regional Vice President, instructed her to do a facsimile advertisement campaign.  *See* Deposition of April Comerford, attached as <u>Exhibit 6</u>, at 39-40.  Vicki Courtemanche, general manager for the Durham, North Carolina LaQuinta, has testified that she also sent unsolicited facsimile advertisements at the direction of her general manager, Kathleen Williams.  *See* Deposition of Vicki Courtemanche, attached as <u>Exhibit 7</u>, at 19.

Mr. Lawson testified that he told Mr. Prinzo that with respect to the fax campaign "I was not comfortable doing it and, quite honestly, raised the point that you all are going to get in trouble for this . . . And Joe Prinzo's response was don't worry about it, do it.  That's what LaQuinta has lawyers for."  *See* Lawson Depo. at 48-49.  Indeed, Mr. Lawson made clear that the facsimile advertising done by LaQuinta was implemented with complete disregard for the TCPA:

Q.     Was your understanding of this faxing that it was unsolicited?

THE WITNESS:     It was completely unsolicited.

*See* Lawson Depo at 87.

There are certain common threads among the LaQuinta facsimile advertisement campaigns that the Plaintiff is attempting to certify.  They were all: (1) performed by LaQuinta employees (2) executed at the direction of their superiors (3) designed to increase revenue; (4) were not optional; and (5) exclusively used Sales Genie to identify targets and PROTUS to transmit the facsimile advertisements.

**D.  The Plaintiff has confirmed the existence of a facsimile broadcasting campaign through Canadian based company PROTUS.**

Despite the uncontested facts that no less than six of LaQuinta's employees were involved in the planning, implementation and execution of a widespread facsimile advertisement campaign in 2007, LaQuinta has produced less than 50 pages of documents to date in this case.[1] As a result, the Plaintiff was forced to file an Application for Issuance of Request for International Judicial Assistance to Canada. *See* Doc No. 25.  Over LaQuinta's objection, this Court allowed the Plaintiff to file a related action in the Superior Court in Ontario, Canada to seek discovery from the fax broadcaster utilized by LaQuinta, PROTUS. *See* Doc. No. 33.  In

---

[1] Many of those documents related to the Plaintiff's pre-suit investigation in this case.

response to the Plaintiff's subpoena that was served after obtaining an Order from the Superior

Court of Ontario[2], PROTUS produced documents that specifically identified the amount of

facsimile activity engaged in by each LaQuinta general manager discussed above.  Using the

documents produced, Plaintiff, through expert testimony, has carefully documented the scale of

faxing by LaQuinta.  Records obtained from PROTUS demonstrate that a total of 26,497

unsolicited fax advertisements were sent in the proposed class period.  The PROTUS records

demonstrate the following activity for each LaQuinta General Manager:

- Mr. Lawson sent 16,200 Junk Faxes between March 18, 2007 and July 10, 2008.
- Ms. Comerford sent 6,216 Junk faxes between April 13, 2007 and May 4, 2007.
- Ms. Courtemanche sent 4,081 Junk Faxes between April 4, 2007 and August 28, 2007.

*See* Second Expert Report of Robert Biggerstaff, attached as <u>Exhibit 9</u>, at 17.

## V.  ARGUMENT

### A.  The policy behind Rule 23 requires certification in this case to protect the interest of justice and rights of the class.

Over thirty years ago, the United States Supreme Court confirmed that "[c]lass actions

serve an important function in our system of civil justice." *Gulf Oil Co. v. Barnard*, 452 U.S. 89,

99 (1981).  This approach was echoed by this District in *Arrington v. Colleen, Inc.,* 2001 WL

34117734 at * 1 (D. Md. 2001):

> Class certification is a useful tool which can economize and focus judicial
> resources by allowing the court to consolidate similar claims and provide
> consistent and conclusive final judgments. Class certification also allows claims
> that may not otherwise be brought, because the cost of bringing the individual
> claim is prohibitive when the remedy is either injunctive relief or small monetary
> damages.

---

[2] *See* <u>Exhibit 8</u>.

As discussed above, this matter contains allegations under the Telephone Consumer Protection

Act.  Since the enactment of the TCPA, trial[3] and appellate[4] courts nationwide have scrutinized

and approved consumers' use of the class action vehicle to combat illegal telemarketing.

In this District, the Chief Judge agreed that the TCPA is appropriate for enforcement via

the class action mechanism. *See Germantown Copy Center, Inc. v. ComDoc, Inc.*, 2011 WL

1323020 (D. Md. 2011).  In *ComDoc,* Judge Chasanow rejected the idea that, as a matter of law,

the TCPA cannot be enforced as a class action in this District, holding:

> There is no authority stating that a class action may never be certified under the
> TCPA. To the contrary, many courts have in fact certified 'junk fax' class actions
> under the Act. *See, e.g., Targin Sign Sys., Inc. v. Preferred Chiropractic Ctr.,
> Ltd.,* 679 F.Supp.2d 894, 899 (N.D.Ill.2010); *CE Design Ltd. v. Cy's Crabhouse
> N., Inc.,* 259 F.R.D. 135, 143 (N.D.Ill.2009); *Hinman v. M & M Rental Ctr.,* 545

---

[3] <u>Federal Trial Court Decisions</u>:  *See e.g., The Savanna Group, Inc. v. Trynex, Inc.,* 2013 WL 66181
(N.D.Ill. Jan 4, 2013); *Lee v. Stonebridge Life Insurance Co.,* 289 F.R.D. 292 (N.D.Cal. Feb 12, 2013).
Since the enactment of the TCPA, trial and appellate  courts nationwide have scrutinized and approved
consumers' use of the class action vehicle to combat illegal telemarketing. *Garo v. Global Credit &
Collection Corp.,* 2011 TCPA Rep. 2087 (D. Az. 2011); *Creative Montessori Learning Center v. Ashford
Gear*, 2011 WL 3273078 (N.D. Ill. July 27, 2011), vacated and remanded for review of adequacy of class
counsel, *Creative Montessori Learning Ctr. V. Ashford Gear LLC, 662.F3d 913 (7th Cir. 2011), class
cert. granted by Creative Montessori v. Ashford Gear, LLC,* 2012 WL 3961397 (N.D. Ill. Sept. 10, 2012);
*C.E. Design LTD v. King Architectural Metals, Inc.,* 2010 WL 5146641 (N.D. Ill. Dec. 13, 2010); *Garrett
v. Ragle Dental Lab., Inc.,* 2010 WL 4074379 (N.D. Ill, October 12, 2010);  *Ira Holtzman v. Gregory
Turza,* 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009); *CE Design v. Cy's Crabhouse North, Inc,* 259 F.R.D.
135 (N.D. Ill. July 27, 2009); *Green v. Service Master on Location Services,* 2009 WL 1810769 (N.D. Ill.
June 22, 2009); *G.M. Sign v. Finish Thompson, Inc.*, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009); *CE
Design v. Beaty Construction, Inc.,* 2009 WL 192481 (N.D. Ill. Jan. 26, 2009); *Hinman v. M & M Rental
Ctr., Inc.*, 545 F.Supp.2d 802 (N.D. Ill. 2008).  *Saf-T-Gard Intern., Inc. v. Wagener Equities, Inc.*, 2008
WL 2651309 (N.D.Ill. 2008); *Sadowski v. Med 1 Online, LLC,* 2008 U.S. Dist. LEXIS 41766 (N.D. Ill.
2008); *G.M. Sign, Inc. v. Franklin Bank, S.S.B,* 2008 WL 3889950 (N.D.Ill. 2008); *Hicks v. Client Servs.,
Inc.,* 2008 WL 5479111 (S.D. Fla. 2008); *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642 (W.D.Wash.,
2007).

[4] Appellate court decisions relating to the enforcement of the TCPA via class action include: *Critchfield
Physical Therapy v. The Taranto Group, Inc.,* 263 P.3d 767 (Kan. 2011); *Jonathan Blitz v. Agean, Inc.,*,
677 S.E.2d 1 (North Carolina Court of Appeals, June 2, 2009); *American Home Services, Inc. v. A Fast
Sign Company*, 287 Ga.App. 161, 651 S.E.2d 119 (2007); *Display South, Inc. v. Graphics House Sports
Promotions, Inc.* --- So.2d ----, 2008 WL 2329929 (La.App. 1 Cir. 2008); *Lampkin v. GCH, Inc.*, 146
P.3d 847 (2006); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc., et al.*, 203 Ariz.
94, 50 P.3d 844 (Ariz. App. 2002); *Hooters of Augusta, Inc. v. Nicholson, et. al.,* 245 Ga.App. 363, 537
S.E.2d 468 (2000).

> F.Supp.2d 802, 808 (N.D.Ill.2008); *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642, 651 .

*See Germantown Copy Center,* 2011 WL 1323020 at *2.  This acknowledgement is unremarkable, given the United States Supreme Courts recent recognition that the TCPA is routinely enforced via class actions.  In addressing whether federal courts had jurisdiction to hear cases arising under the TCPA, the Supreme Court observed that the vast majority of TCPA cases are class actions:

> The current federal district court civil filing fee is $350. 28 U.S.C. § 1914(a). How likely is it that a party would bring a $500 claim in, or remove a $500 claim to, federal court? Lexis and Westlaw searches turned up 65 TCPA claims removed to federal district courts in Illinois, Indiana, and Wisconsin since the Seventh Circuit held, in October 2005, that the Act does not confer exclusive jurisdiction on state courts. All 65 cases were class actions, not individual cases removed from small-claims court.  There were also 26 private TCPA claims brought initially in federal district courts; of those, 24 were class actions.

*Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 753 (2012). The Kansas Supreme Court looking at the policy behind Rule 23 summarized what TCPA cases are appropriate for class certification:

> We do not agree with the defendant's contention that over 100,000 individual small claims actions would be superior to a single class action. While the defendant in such an action might benefit if only a small number of plaintiffs found it worth their while to bring suit or were aware of their rights under the TCPA, this small turnout would serve only to frustrate the intent of the TCPA and to protect junk fax advertisers from liability. It would, accordingly, not provide a "superior" method for individual plaintiffs.

*Critchfield Physical Therapy v. The Taranto Group, Inc.,* 263 P.3d 767, 780 (Kan. 2011) (certifying a TCPA illegal marketing class Kansas's equivalent of Rule 23(b)(3).

### B.  Plaintiff meets each of the four requirements of Rule 23(a)

To be certified as a class, the proposed class must meet all four elements of Fed. R. Civ. P. 23(a), *i.e,* numerosity, commonality, typicality, and adequacy of representation.  Plaintiff meets the four requirements of Rule 23(a).  As the Fourth Circuit recently stated:

> [T]he trial court may find it necessary to 'probe behind the pleadings' and
> ultimately, will need to conduct a 'rigorous analysis' to determine whether the
> Rule 23 prerequisites have been satisfied. *Id.* (internal citations and quotation
> marks omitted); *see also Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S.
> Ct. 1184, 2013 U.S. LEXIS 1862, *19 (2013) (cautioning that in a rigorous class
> certification analysis, '[m]erits questions may be considered to the extent — but
> only to the extent — that they are relevant to determining whether the Rule 23
> prerequisites for class certification are satisfied').

*Ealy v. Pinkerton Gov't Servs., Inc.*, No. 12-1252, 514 Fed. Appx. 299, 2013 WL 980035 *5 (4th

Cir. Mar. 14, 2013) (unpublished).  Given the extensive undisputed facts in this case that have

come as a result of more than two years of litigation, the Plaintiff meets this burden.

### 1.  Defendant's widespread illegal marketing campaign satisfies numerosity.

The first requirement under Fed. R. Civ. P. 23 is that the proposed class be so numerous

that joinder of all class members in the action is impracticable. *See* Fed. R. Civ. P. 23(a)(1).

While there is no magic number under federal law which automatically renders joinder

impracticable, impracticability of joinder is self-evident in this case.  The proposed class consists

of 26,497 entities that LaQuinta sent unsolicited facsimile advertisements to. This Court has

previously recognized that a proposed class consisting of 35 individuals would make joinder

impracticable. *See Kohl v. Association of Trial Lawyers of America*, 183 F.R.D. 475, 483 (1998)

(Williams, J.)

### 2.  Common questions of fact and law dominate Plaintiff's class claims due to LaQuinta's uniform illegal facsimile marketing campaign

The second requirement under Fed. R. Civ. P. 23(a) is that there are questions of law or

fact common to the class.  Common questions of law and fact almost always exist where the

claims of the class originate from the same wrongful acts or underlying set of circumstances.  As

this Court stated in *Kohl v. Association of Trial Lawyers of America*:

> Under the "commonality" prong, Rule 23(a)(2) only requires that ***some questions***
> ***of law or fact*** be shared by the putative class members, and not all questions

raised be common. *See Forbush v. J.C. Penney Co.,* 994 F.2d 1101, 1106 (5th Cir.1993).

*Kohl* 183 F.R.D. at 484 (emphasis added). As long as "the class members have suffered the same injury" commonality will be established. *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011).

Here, the scope of the central question pertinent to the class members – that LaQuinta operated an illegal facsimile advertisement program, deigned to increase its sales volume is identical to all class members in all material respects. Indeed, LaQuinta's scheme was a memorialized business plan, and implemented by executives at the company. As demonstrated in LaQuinta's internal memorandum, LaQuinta locations had a practice and process of sending facsimile advertisements.

From this practice and process common facts predominate such as (1) LaQuinta's use of the PROTUS fax broadcasting services; (2) the single source that provided these facsimile numbers. Sales Genie; (3) the fact that LaQuinta conducted this marketing uniformly without the consent of intended recipients and without knowledge of the requirements of the TCPA as it pertains to facsimile advertising. As evidence gathered thus far amply demonstrates, the impact of the common marketing campaign reached victims across the country. Common questions of law in the instant case include but are not limited to (1) whether a facsimile advertisement is a phone call within the meaning of the TCPA; (2) whether LaQuinta is liable for the acts of its executive vice presidents, regional vice presidents, general managers other employees; and (3) whether the violation of the TCPA was "knowing" or "willful".

The presence of these common issues of both fact and law each separately satisfy the prerequisite of commonality. Finally, because these questions are common to the entire class and predominate all individual issues, certification of the class will provide the superior method

for ensuring fair and efficient adjudication, meeting the necessary 23(b)(3) findings as well. *See infra.*

### 3.   Plaintiff's claims are typical of the class and no conflict exists

The third prerequisite for a class certification under Fed. R. Civ. P. 23(a)(3) is that the claims or defenses of the class representatives be typical of those of the class members.  As this Court explained in *Kohl v. Association of Trial Lawyers of America*:

> The "typicality" requirement assures that the claims of the representative party are similar enough to the claims of the putative class so that the class members may be adequately represented. However, ***"[f]actual differences will not necessarily render a claim atypical if the representative's claim arises from the same event, practice or course of conduct*** that gives rise to the claims of the class and is based on the same legal theory." *Smith v. B & O Railroad Co.,* 473 F.Supp. 572, 581 (D.Md.1979).

*Kohl* 183 F.R.D. at 484 (emphasis added).  The Fourth Circuit Court of Appeals concurs with this Court that a plaintiff's claim is typical if it arises from the same events or practices or course of conduct that gives rise to the claims of the other class members, and the named plaintiff's claims are based on the same legal theory. *Gunnells v. Healthplan Services, Inc.,* 348 F.3d 417, 425 (4th Cir. 2003) *cert. denied*, 542 U.S. 915 (2004).

Here, the Plaintiff was subjected to the same illegal marketing campaign that the rest of the class was subjected to; soliciting it to respond to a facsimile advertisement and purchase a LaQuinta hotel room.  Its claim is not only typical, but it is identical to the common claims of the class, *i.e.* a violation of the TCPA based on this specific marketing campaign.  Plaintiff's claims present virtually identical fact patterns and legal theories which each Class member would have to present if he or she filed an individual suit.  The claim of every Class member is based upon the same conduct by the Defendant.  The Plaintiff's claims are, therefore, not only typical of the claims of the Class, they are virtually identical to them.

14

**4.   The class is adequately represented by both the Plaintiff and class counsel**

The fourth prerequisite, adequate representation, is meant to ensure that the absent class members are properly represented by both the named class representatives and their attorneys.

As stated by the U.S. Supreme Court in *Amchem Products, Inc. v. Windsor,* 521 U.S. 591:

> The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.

*Id.* at 625-26 (quoting *East Jex. Motor Freight System, Inc. v. Rodriquez,* 431 U.S. 395 at 403). Brey Corp. is capable of "fairly and adequately protect[ing] the interests of the class." Fed. R. Civ. P. 23(a)(4); *See* Affidavit of Michael Brey, attached as <u>Exhibit 10</u>, ¶¶ 5-6." Brey Corp.'s common interests with the class are addressed above. There are no conflicts of interest between Brey Corp. and the class members. *Id.* The class and Brey Corp. were subjected to the same illegal marketing practices of LaQuinta. Brey Corp. takes its role as class representative seriously and is committed to and protecting the interests of the class. *Id.*

Finally, counsel for the class has extensive experience in class action lawsuits, and are adequate counsel for the class. Brey Corp. is represented by class counsel Edward Broderick, founder of Broderick Law, P.C., and several other attorneys, including co-class counsel Stephen H. Ring of Stephen H. Ring, P.C. and Matthew McCue of The Law Office of Matthew P. McCue. The experience of Messrs. Broderick, Ring and McCue are outlined in their attached affidavits. *See* Affidavits of Edward Broderick, Matthew P. McCue and Stephen H. Ring, attached as <u>Exhibit 11</u>. Combined, Brey Corp.'s counsel, and associated firms, have substantial practice in class, collective and representative actions and are amply qualified to handle the claims in this lawsuit. *Id.* Counsel takes their responsibility seriously and is committed to the resources and advocacy necessary to see this case brought to resolution. *Id.*

Both Plaintiff and their counsel have significant experience litigating TCPA consumer class actions, and have previously been appointed in Maryland courts as a class representative and class counsel in TCPA cases.  *See e.g. Brey Corp t/a Hobby Works v. Life Time Pavers, Inc.,* Circuit Court for Montgomery County, Maryland, Civil Action No. 349410-V (2011), attached as Exhibit 12.

### C. Class certification is maintainable under Rule 23(b)(3) because common questions predominate over individual inquiries and the class mechanism is superior to thousands of individual cases.

Once Plaintiff has met the pleading threshold of Rule 23(a), he must also demonstrate that the case is maintainable as a class action under Rule 23(b).  Rule 23(b)(3) requires the Plaintiff to establish that the case presents a manageable class action in light of the facts and legal theory as pled by the Plaintiff—as well as a common sense review of the evidence developed thus far. *See Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551-2552 (2011).

As a consequence of LaQuinta's broad and uniform illegal marketing practice, the class is maintainable under Rule 23(b)(3).  Plaintiff easily vaults the various Rule 23(a) criteria, and this is perhaps the best indicator that Rule 23(b)(3) is satisfied. *See Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b) (3) requirement of commonality").  When seeking "opt-out" class certification, the plaintiff must fulfill the additional requirements set forth in Rule 23(b)(3): (1) common questions must predominate over any questions affecting individual members; and (2) class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3); *see, e.g., Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997). Although often predominance (*i.e.* uniformity of claims and defenses) will strongly establish superiority; how the class is the most efficient mechanism for resolution is explained separately below.

16

**Predominance.** The Supreme Court has made clear that the predominance of common issues requirement under Rule 23(b)(3) is a test readily met in certain cases alleging consumer injuries. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997). The reason is simple: when a defendant takes a common action (here, facsimile marketing) and applies it to a mass group of victims, the defenses and necessary proof overwhelmingly applies to the class as opposed to any individual.  In *Stillmock v. Weis Markets, Inc.*, 385 Fed Appx. 267, 2010 WL 2621041 (C.A.4 (Md.)) (2010), the Fourth Circuit vacated the denial of a motion for class certification where the Plaintiff's alleged that a retail store printed credit card and debit card receipts in violation of Fair and Accurate Credit Transaction Act's ("FACTA") truncation requirement, instructing with respect to Rule 23(b)(3) analysis:

> Critically, Rule 23(b)(3)'s commonality-predominance test is qualitative rather than quantitative. *Gunnells,* 348 F.3d at 429. Thus, while courts have properly denied class certification where individual damages issues are especially complex or burdensome, *see, e.g., Pastor v. State Farm Mut. Auto. Ins. Co.,* 487 F.3d 1042, 1047 (7th Cir.2007), where, as here, the qualitatively overarching issue by far is the liability issue of the defendant's willfulness, and the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner, the individual statutory damages issues are insufficient to defeat class certification under Rule 23(b)(3). *See Murray v. GMAC Mortg. Corp.,* 434 F.3d 948, 953 (7th Cir.2006)("Refusing to certify a class because the plaintiff decides not to make the sort of person-specific arguments that render class treatment infeasible would throw away the benefits of consolidated treatment. Unless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification."); *Smilow v. Southwestern Bell Mobile Systems, Inc.,* 323 F.3d 32, 40 (1st Cir.2003) ("The individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3). Where ... common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain."). Here, the putative class members were exposed to the identical risk of identity theft in the identical manner by the repeated identical conduct of the same defendant, and none suffered actual damages from identity theft. Under these circumstances, it strains credulity to conclude that the individual damages issues presented by the purported class which Plaintiffs seek to certify would be anything other than simple and straightforward. Pragmatically, the only substantive difference

between putative class members for purposes of affixing the statutory damages figure within the statutory damages range of $100 to $1,000 or in awarding punitive damages is the number of receipts received by a single class member during the approximately eighteen months at issue. And indeed, this difference does not complicate matters very much at all given that the class can be broken down into subcategories based upon the number of violating receipts received per putative class member. In sum, we hold that common questions of law and fact predominate over the individual issues presented by Plaintiffs' purported class action, thus satisfying Rule 23(b)(3)'s commonality-predominance test.

*Stillmock,* 385 Fed.Appx. at 273, 2010 WL 2621041*5.  Here, it is evident that Defendants self-described practice and process of sending facsimile advertisements is the predominant and overarching issue being litigated before this Court.  If the Court finds later on summary adjudication that the actions or inactions of LaQuinta are a defense to the claims, such a decision shall apply to every class member.  If a jury finds that LaQuinta did not participate sufficiently in the marketing campaign, that will apply to every message sent.  Similarly, if a jury finds that the violations of LaQuinta were "willful or knowing", the TCPA's statutory damages will apply to equally to each class member.  Therefore, this case will not simply be determined predominately by class-wide issues of law and fact, but those issues overwhelm all others.  As in *Stillmock*, the putative class members here were exposed to identical harm that will result in identical statutory damages.  As such, common questions of law and fact predominate over the individual issues presented by this putative class action, thus satisfying Rule 23(b)(3)'s commonality-predominance test.

A colorful analysis comes from the Northern District of Illinois certifying a TCPA class action due to unsolicited fax transmissions under Rule 23(b)(3).  In rejecting defendants' argument that the case would be plagued with evidence of individual questions of consent (that only the defendant possessed and had not produced), the court responded, "[Defendants'] contention that questions affecting only individual members would predominate over class issues

is no better than pure fiction-and a pretty poor quality of fiction at that." *Targin Sign Sys., Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894, 898-99 (N.D. Ill. 2010).  Similarly here, the Defendant has failed to produce one document that evidences consent from any of the recipients of its facsimile advertisements.

**Superiority.** The next inquiry is whether the class action mechanism itself is the superior mechanism for resolving this claim.  The Fourth Circuit Court of Appeals in *Stillmock* described the relevant considerations when performing this analysis:

> Although a determination of superiority necessarily depends greatly on the circumstances surrounding each case, some generalizations can be made about the kinds of factors the courts will consider in evaluating this portion of Rule 23(b)(3).  The rule requires the court to find that the objectives of the class-action procedure really will be achieved in the particular case. In determining whether the answer to this inquiry is to be affirmative, the court initially must consider what other procedures, if any, exist for disposing of the dispute before it. The court must compare the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court.

*Stillmock,* 385 Fed.Appx  at 274, 2010 WL 2621041*6 *quoting* 7AA Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1779 (3d ed.2005).

Here, the Plaintiff seeks to certify a case under the TCPA.  Statutory damages are involved ($500 or $1,500 depending on whether the jury finds the conduct willful or knowing), and therefore, individual damages are small, and class members would be unlikely to litigate claims on their own.   The Fourth Circuit in *Stillmock* discussed why claims with small statutory damages are suited for class resolution:

> Apparently sensing the shallowness of the district court's analysis, Weis Markets argues that the availability of attorney's fees and punitive damages under FCRA makes individual lawsuits feasible.

> Weis Markets' argument is without merit. First, the low amount of statutory damages available means no big punitive damages award on the horizon, thus

> making an individual action unattractive from a plaintiff's perspective. Second, there is no reasoned basis to conclude that the fact that an individual plaintiff can recover attorney's fees in addition to statutory damages of up to $1,000 will result in enforcement of FCRA by individual actions of a scale comparable to the potential enforcement by way of class action.

*See Stillmock* 385 Fed.Appx at 274, 2010 WL 2621041 *7.  Moreover, when considering whether a class action is superior to individual actions, economy and efficiency are considered the most important elements of the inquiry.  Where the Court is faced with the adjudication of many thousands of claims based on an admitted practice and procedure of wide-spread conduct, it is beyond dispute that having all claims of the class litigated at once will serve judicial economy and efficiency. *See Stillmock* at 275 ("class certification promotes consistency of results, giving Weis Markets the benefit of finality and repose.").

Defendant's uniform policy and practice of illegal marketing through the United States not only creates legal and factual issues that predominate over the entire class, but constitutes every dispositive issue before the Court.  Requiring LaQuinta's victims across multiple states to individually litigate their claims is not superior to a single resolution of these issues.  The class is readily available, clearly defined, and identifiable.  Therefore, the Court should grant certification under Rule 23(b)(3).

### D.  The records produced by Sales Genie and PROTUS are more than sufficient to identify the Class and prove violations

LaQuinta's defenses to this putative class action are limited, as it is undisputed that LaQuinta employees effectuated an unsolicited facsimile campaign using a single lead source and a single facsimile broadcaster.  LaQuinta apparently intends to oppose class certification in part based on its contention that the Plaintiff cannot identify class members, as records sufficient to identify the class were lost both by LaQuinta and by PROTUS, LaQuinta's facsimile broadcaster.  Courts in class actions generally, as well as TCPA cases do not reward defendants

for losing or destroying records which would identify a class, even if that action is done in accordance with its corporate record retention policy. Perhaps more importantly, it is not essential for class certification that Plaintiff be able to identify every member of the class—rather, class members must be identifiable through defendant's conduct—*i.e.* that they were sent a fax by the defendant. *See Agne  v. Papa John's International, Inc.*, 286 F.R.D. 559, 566 (W.D. Washington) (the identity of each class member need not be known at the time of certification); *Boundas v. Abercombie & Fitch Stores, Inc.,* 280 F.R.D. 408, 417 (N.D. Ill. 2012) ("The argument's premise is that absent class members' actual identities must be ascertained before a class can be certified. That premise is incorrect; as just noted, the identity of individual class members need not be ascertained before class certification. *See* <u>7A Wright, Miller & Kane,</u> <u>supra, § 1760, at 736</u> ('the class does not have to be so ascertainable that every potential member can be identified at the commencement of the action'. It is enough that the class be ascertainable.") The Plaintiff in this case will certainly be able to meet its burden that the class is ascertainable, using records it has retrieved in discovery.

The Plaintiff, through the use of third party subpoenas, has been able to recreate the lead lists containing the facsimile numbers of consumers who were sent LaQuinta facsimile advertisements. As reflected in the FRE 901 Stipulation entered into by the parties, it is undisputed that Mr. Lawson and Ms. Comerford utilized the following search criteria in the Sales Genie system during 2007 and received the results of these searches:

<u>April Comerford</u>

    i. <u>Report 1</u>: County: Seminole, FL; Volusia, FL; Employee Size: 20 to All including Unknown; Sales Volume: $500,000 to All Including Unknown; Business leads with fax numbers
    ii. <u>Report 2</u>: Radius: 60.0 Mile(s) from 32819 in Orlando, FL; Employee Size: 50 to All including Unknown; Business leads with fax numbers

    iii.  <u>Report 3</u>: City: Fort Lauderdale, FL 21577; Business leads with fax numbers

George Lawson

    iv.  <u>Report 2</u>: Radius: 8.0 Mile(s) from 20794; Employee Size: 20 to All including Unknown; Business leads with fax numbers
    v.  <u>Report 3</u>: Radius: 7.5 Mile(s) from Centroid of 21237 in Rosedale, MD; Employee Size: 20 to All including Unknown; Business leads with fax numbers
    vi.  <u>Report 4</u>: Radius: 6.0 Mile(s) from Centroid of 21090 in Linthicum HTS, MD; Employee Size: 20 to All including Unknown; Business leads with fax numbers

*See* Sales Genie Stipulation, attached as <u>Exhibit 13</u>, at 8-9. Sales Genie did not retain exact copies of these lists, but has recreated the results these reports produced. In order to do so, Sales Genie created two separate versions of the results generated by applying the search parameters to its current database: in the first version, Sales Genie removed entities from the report that were added to the Sales Genie database after January 2007, which can be identified by the year "2007" associated with the computer record for a given entity in Sales Genie's database. In the second, Sales Genie removed entities from the reports that were added to the Sales Genie database after January 2008, which can be identified by the year "2008" associated with the computer record for a given entity in Sales Genie's database. *See* Sales Genie Stipulation at 9. Using their available business records, this process reflects the best possible method of recreating the lead lists used by LaQuinta employees to conduct facsimile advertising. *See* Sales Genie Stipulation at 11. Indeed, the Plaintiff's expert confirmed that this approach "is consistent with my own practices and recommendations I have made to others when seeking to reconstruct lost subsets of data from periodic snapshots of a larger dataset." *See* Second Expert Report of Robert Biggerstaff at 9.

Courts have not found that a loss of facsimile transmission logs is a basis to deny class certification, nor does the absence of such a list preclude a finding of liability.  In *CE Design v. Beaty Const., Inc.*, the District Court for the Northern District of Illinois forcefully rejected precisely that argument:

> Here, the proposed class is everyone who received one of the faxes for hardwood crane mats in August 2003, *i.e.,* 2,257 businesses. Beaty Construction claims the list stating the names of these businesses has been lost or destroyed. Therefore, Beaty Construction argues numerosity is not present: "numerosity of class members cannot be shown simply by referring to an invoice with the total number of potential recipients of a fax." (Def. Resp. Br. at 7.) This argument is not persuasive.
>
> First, the Court acknowledges there is no evidence that the list of targeted businesses was destroyed with a nefarious purpose. Nevertheless, a defendant cannot escape liability simply by destroying the list of its victims. *See, e.g., Appleton Elec. Co. v. Advance–United Expressways,* 494 F.2d 126, 139 (7th Cir.1974) ("class actions cannot be defeated by destroying records."). For example, in *Sadowski v. Med 1 Online LLC.,* the plaintiffs accused the defendants of sending out junk faxes in violation of the TCPA and sought class certification. No. 07 2973, 2008 U.S. Dist. LEXIS 41766, 2008 WL 2224892, (N.D.Ill. May 27, 2008). In response, the defendants claimed numerosity was not satisfied because the list of potential plaintiffs had been destroyed: "[defendant] claims that plaintiff's class size amounts to nothing more than speculation because the list of specific fax numbers that received the faxes at issue no longer exists." *Id.* at *8. The court rejected this argument.
>
> Although the plaintiff could not produce a specific list of businesses, the court accepted the plaintiff's assertion that the class would meet the numerosity requirement. *Id.* The court reasoned that a good faith estimate can be sufficient where the class members are not readily ascertainable: "While we agree that plaintiff's allegations regarding numerosity amount to estimates, we find that they amount to more than mere conclusory allegations or speculation." *Id.* The court noted that "common sense allows us to infer" that a "good number" of the more than 300,000 junk faxes allegedly sent by the defendant were received by Illinois residents. *Id.* Finally, the court found that denying class certification would unfairly punish the victims, especially where "the missing list of recipients was last in defendant's possession." *Id.* at *9.
>
> This reasoning was echoed in *Heckert v. MRC Receivables Corp.,* No. 08C760, 2008 U.S. Dist. LEXIS 98159, 2008 WL 5082725 (N.D.Ill.Dec.1, 2008). In *Heckert,* the plaintiffs alleged that the defendants had a policy of violating federal and state law by: (1) suing Illinois residents without attaching the signed credit

card agreement to the complaint; and (2) initiating lawsuits after the statute of limitations had expired. *Id.* at *5. The defendants opposed class certification on the grounds that numerosity was not satisfied. *Id.* at *9. According to the defendants, it would be impossible to tell whether the potential plaintiffs' claims were time-barred because there was no master list recording the identity of the plaintiffs or when the plaintiffs signed their credit card agreements. *Id.*

Just as in *Sadwoski,* the court rejected the notion that a master list of potential plaintiffs is necessary for class certification: "A class is identifiable if its members can be ascertained by reference to objective criteria. It is not fatal for class definition to require some inquiry into individual records, as long as the inquiry is not so daunting as to make the class definition insufficient." *Id.* at 10. The court determined that the statute of limitations problem could be remedied, and thus a potential class identified, by using the dates of the credit card agreements as reported in the affidavits of the individual plaintiffs. *Id.*

Here, as in *Sadowski* and *Heckert,* the Court will not bar class certification because the defendant has lost or destroyed the list of its alleged victims. Beaty Construction does not deny that it faxed its advertisements to more than 2,000 businesses.

*CE Design v. Beaty Const., Inc.*, No. 07 C 3340, 2009 WL 192481 *2-4 (N.D. Ill. Jan. 26, 2009).

*See also Critchfield Physical Therapy v. The Taranto Group, Inc.*, 263 P.3d, 767, 780 (Kan.

2011) ("It is not necessary that class description identify every individual member of the class

from the outset. It suffices that the description identifies a group of plaintiffs by describing a set

of common characteristics such that a member of the group may demonstrate a right to recovery

based on the description.")

In *Agne  v. Papa John's International, Inc.*, 286 F.R.D. 559 (W.D. Washington) the court

held that the absence of records showing precisely which cell phone numbers were sent text

messages in violation of the TCPA does not preclude certification, particularly where the records

can be reconstructed.

they [Defendants] argue that it is not possible to identify the individuals who fit that definition because there are "no records indicating to which cell phone numbers OnTime4U sent emailed text message coupons at the request of [the Rain City Defendants]." (Dkt. No. 243 at 14–15.) Plaintiff responds that the Rain City Defendants have already produced some documents that can be used to

24

identify class members and that the class lists can be reconstructed by exporting names from Papa John's PROFIT system and then removing landline numbers from the list so that only cellular telephone numbers remain. The Court notes that Plaintiff's assertion is nearly identical to one made by Papa John's in its response to a motion for sanctions for evidence spoliation. (Dkt. No. 292 at 2 (stating that the OnTime4U call lists created by the Rain City Defendants "can simply be recreated using the same parameters originally used").) Defendants cannot have it both ways.

Ultimately, the Rain City Defendants are arguing that identifying class members and providing them with notice may be difficult. These concerns are more properly addressed after class certification, except to the extent that they create manageability problems that should be considered under Rule 23(b)(3). *See* Newberg on Class Actions § 4:35 ("While notice considerations technically do not come into play until a class is certified, it is proper for a court to consider management difficulties associated with class notice at the precertification stage...."). The Court discusses manageability later in this order.[FN6]

FN6. Even if Defendants are ultimately unable to produce complete class lists, other types of notice may be able to correct for this deficiency. *See, e.g. CE Design v. Beaty Constr., Inc.,* No. 07 C 3340, 2009 WL 192481, at *4 (N.D.Ill. Jan. 26, 2009) (certifying a class where the list of victims that were illegally sent an advertisement via fax had been destroyed and noting that "potential plaintiffs that come forward will have to represent to the Court—via affidavit and under the penalty of perjury—that they received the fax on the dates in issue"). Furthermore, it would be unfair to deny class certification because of the potential difficulty of identifying the class members where that difficulty is mostly due to the fact that OnTime4U destroyed the call lists that it used. *See id.* at *3–4 (refusing to "bar class certification because the defendant has lost or destroyed the list of its alleged victims").

The class definition provides sufficiently precise and objective criteria to determine class membership. The implicit prerequisite of ascertainability is therefore satisfied.

*Agne v. Papa John's International, Inc.*, 286 F.R.D. at 566. In short, LaQuinta should not be able to rely on the fact that records were lost and destroyed in order to avoid liability of its indisputably illegal telemarketing conduct.

## VI. CONCLUSION

LaQuinta engaged in a uniform and illegal marketing campaign that violated the rights of thousands of entities across the country. LaQuinta's violations of the TCPA were caused from a

systemic marketing campaign carried out by its own employees without any legal justification or regard for the TCPA's restrictions on facsimile advertisements.  As courts across the country have recognized, such TCPA claims are predominated by common issues of fact and law, which make the class action mechanism superior to flooding this Court with tens of thousands of individual adjudications.  Judicial efficiency, justice, and the black letter requirements of Rule 23 all support certification of this action.  Plaintiff respectfully requests that its Motion for Class Certification be granted.

Dated:  October 4, 2013                    Respectfully submitted,
                                           Attorneys for Plaintiff
                                           *Brey Corporation*


                                           /s/ Stephen H. Ring
                                           Stephen H. Ring (Bar No. 00405)
                                           STEPHEN H. RING, P.C.
                                           506 Main Street, Suite 215
                                           Gaithersburg, MD  20878
                                           (301) 563-9249
                                           (301) 563-9639 (fax)
                                           shr@ringlaw.us


                                           /s/  Edward A. Broderick
                                           Edward A. Broderick
                                           Broderick Law, P.C.
                                           125 Summer St., Suite 1030
                                           Boston, MA 02110
                                           Phone: (617) 738-7080
                                           ted@broderick-law.com
                                           Admitted *Pro Hac Vice*


                                           /s/ Matthew P. McCue
                                           Matthew P. McCue
                                           The Law Office of Matthew P. McCue
                                           1 South Avenue, Third Floor
                                           Natick, MA 01760
                                           (508) 655-1415
                                           (508) 319-3077 *facsimile*
                                           mmccue@massattorneys.net
                                           Admitted *Pro Hac Vice*

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 4, 2013, a copy of the foregoing document was filed electronically. Notice of this filing will be sent be e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Edward A. Broderick<br>Edward A. Broderick